UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN BERALL. M.D., M.P.H.,

                    Plaintiff,

-against-

TELEFLEX MEDICAL INCORPORATED,

                    Defendant.

---

10-CV-5777 (LAP)
(Related to Civil Action Nos.
21-mc-794 (LAP) and
21-mc-774 (LAP))

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Teleflex Medical
Incorporated's ("Teleflex") request for a pre-motion conference
regarding the production of documents withheld by Plaintiff Dr.
Jonathan Berall, M.D., M.P.H., ("Dr. Berall") and his former
attorney Mr. Charles E. Baxley.  (See dkt. nos. 307 ("Mot.")[1];
315 ("Reply").)  Specifically, Teleflex seeks production of
(1) the June 1, 2007 Letter of Retention (the "Letter of
Retention") that is referenced in the June 7, 2011 Patent
Security Agreement (the "Security Agreement") between Dr. Berall
and Mr. Baxley (see Mot. at 1; Mot. Ex. A) and (2)
communications between Dr. Berall and Mr. Baxley regarding the
prosecution of the patent-in-suit, U.S. Patent No. 5,827,178
(the "'178 Patent").  (See id. at 1.)  Plaintiff and non-party

---

[1] Defendant filed eight exhibits in support of its motion to
compel.  All references to those exhibits will appear as "Mot.
Ex."

subpoena recipient Mr. Baxley oppose the motion.[2]  (See dkt. no.
310 ("Opp.").)[3]  The Court considers the parties' letter motions
as the briefing on Defendant's motion to compel.

In October 2021, former defendant Verathon Inc.
("Verathon") initiated two miscellaneous actions against Mr.
Baxley in this Court (Verathon Inc. v. Baxley, Case No. 1:21-mc-
794 (LAP) and Verathon Inc. v. Baxley, Case No. 1:21-mc-774
(LAP)), and filed motions pursuant to Federal Rules of Civil
Procedure 37 and 45 to compel Mr. Baxley to comply with
Verathon's third-party subpoena issued in the instant matter,[4]
which was subsequently transferred as to Verathon and is
presently pending in the Western District of Washington,
captioned, Berall v. Verathon Inc., Case No. 2:21-cv-944-RSM.
(See dkt. no. 3 in [21-mc-774].)  Verathon seeks to compel Mr.
Baxley to produce the same documents that Dr. Berall has
withheld in this instant dispute.  (See dkt. nos. 6 ("Verathon
Mot.") in [21-mc-794]; 13 ("Verathon Reply") in [21-mc-794]; 4
in [21-mc-774]; 7 in [21-mc-774].)  Mr. Baxley opposes the

_____

[2] Counsel for Dr. Berall also represents Mr. Baxley.  (See dkt.
no. 310 at 1.)
[3] Plaintiff and Dr. Berall filed eight exhibits in support of
their response to Defendant's motion.  All references to those
exhibits will appear as "Opp. Ex."
[4] Verathon served the subpoena duces tecum on Mr. Baxley on
February 18, 2021.  (See dkt. no. 6 at 1 in [21-mc-794].)

motion.  (See dkt. no. 11 [in 21-mc-794] ("Verathon Opp.").)[5]  To
conserve judicial resources, the Court will address Verathon's
motions in this Order.  The Court refers to its prior orders for
the facts and procedural history of the case.  (See, e.g., dkt.
no. 334 at 2-4.)

For the reasons set forth below, Defendant's request to
compel production from Dr. Berall of the Letter of Retention is
GRANTED to the extent that Dr. Berall possesses the Letter of
Retention.[6]  Defendant's request to compel production of Dr.
Berall's communications with Mr. Baxley regarding the '178
Patent's prosecution, including reexamination, is GRANTED.
Verathon's request to compel production from Mr. Baxley of the
Letter of Retention and communications between Mr. Baxley and
Dr. Berall regarding the '178 Patent's prosecution is GRANTED.

   I.   DISCUSSION

         a. Teleflex's Motion Against Dr. Berall

               i. The Letter of Retention

Teleflex argues that Dr. Berall improperly withholds
the Letter of Retention based on the attorney-client privilege
because (1) the Security Agreement relies on the Letter of

---

[5] Unless otherwise stated, all references to Verathon's motions
are to those in 21-mc-794 (LAP).
[6] Dr. Berall represented to the Court that he is "unable to
locate the 2007 Retention Letter in his possession, custody, or
control."  (Opp. at 1 n.1.)

Retention to describe the scope of Dr. Berall and Mr. Baxley's respective rights in the '178 Patent and (2) "[d]epending on the scope and nature of the conferred interest, Baxley may be a part owner of the patent or a necessary party to the case." (See Mot. at 1-2.)  Dr. Berall argues that the Letter of Retention is irrelevant because the letter "does not assign Baxley any ownership interest in the '178 Patent." (Opp. at 1.)  Rather, Dr. Berall argues that the Letter of Retention created "a contingency arrangement [between Dr. Berall and Mr. Baxley], amounting to 10% of any future royalties resulting from licenses to the '178 patent." (Id.)

The Court agrees with Teleflex.  It is well established that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." See Fed. R. Evid. 401.  "[E]vidence need not be conclusive in order to be relevant.  An incremental effect . . . is sufficient." Doe v. N.Y.C. Dep't of Soc. Servs., 649 F.2d 134, 147 (2d Cir. 1981).  Dr. Berall's dispute regarding whether Mr. Baxley possesses an ownership interest in the '178 Patent highlights the relevancy of the Letter of Retention.  Indeed, the Letter of Retention is relevant to address inconsistencies in Mr. Baxley's statements regarding his ownership interest in the '178 Patent, including his sworn declaration to the United States Patent & Trademark Office (the "USPTO") on June 24, 2011,

stating, that he "believes that Dr. Berall is the sole owner of [the '178 Patent]." (Opp. at 2.) While the Court recognizes that Mr. Baxley secured his claim to 10% of any future royalties from the '178 Patent in the Security Agreement, the Court is unpersuaded by Plaintiff's argument that an unforeclosed security interest on a patent is irrelevant to a patentee's standing to bring suit when Teleflex and Dr. Berall dispute the relevance of the Letter of Retention, not the Security Agreement. (See Opp. at 2.)

    Nor is the Court persuaded that the Letter of Retention is privileged. The Court of Appeals has consistently held that information concerning a client's identity and the payment of legal fees is not privileged, absent special circumstances. See, e.g., Lefcourt v. United States, 125 F.3d 79, 86 (2d Cir. 1997); Vingelli v. United States, 992 F.2d 449, 454 (2d Cir. 1993); United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 505 (2d Cir. 1991); In re Two Grand Jury Subpoenae Duces Tecum, 793 F.2d 69, 71-72 (2d Cir. 1986); In re Shargel, 742 F.2d 61, 62 (2d Cir. 1984). Dr. Berall's attempt to draw a distinction between a "retainer agreement" and a "client identity and fee agreement" fails, as Dr. Berall has not shown that the provisions referring to the Letter of Retention referenced by the Security Agreement are necessary to obtain legal advice. Dr. Berall argues that the "Retention Letter discloses the

client's motives and the nature of the services, and is thus
privileged" (Opp. at 2); however, these conclusory statements do
not show that the Letter of Retention relayed legal advice.
See, e.g., Vingelli, 992 F.2d at 454 ("[T]he attorney-client
privilege only protects confidential communications made for the
purpose of obtaining legal advice."); In re Shargel, 742 F.2d at
62 (2d Cir. 1984) (noting that the attorney-client privilege
"encompass[es] only those confidential communications necessary
to obtain informed legal advice").

The Court agrees with Teleflex that the facts of Varbero v.
Belesis, No. 20-cv-2538 (LJL), 2020 WL 7043503 (S.D.N.Y. Dec. 1,
2020) are distinguishable.  (See Reply at 2.)  Mr. Baxley is not
Dr. Berall's current counsel, the Letter of Retention is
particularly relevant to determine Dr. Berall and Mr. Baxley's
respective rights in the '178 Patent, and taking Dr. Berall's
statements as true, Mr. Baxley is the only person who possesses
the Letter of Retention.  (See id.)  Thus, the Court concludes
that Dr. Berall has failed to demonstrate the special
circumstances necessary to justify disturbing the otherwise
well-settled rule that information concerning a client's
retention letter is generally not protected by the attorney-
client privilege.  Accordingly, Teleflex's motion to compel Dr.

Berall to produce the Letter of Retention is <u>GRANTED</u> to the extent that it is within his possession, custody, or control.[7]

### ii. The Prosecution Documents

The parties do not dispute that Dr. Berall waived the attorney-client privilege over communications with Mr. Baxley regarding the conception and actual reduction to practice of the '178 Patent based on communications that Dr. Berall provided to the USPTO during the '178 Patent's reexamination.[8]  (<u>See</u> Mot. at 3; Opp. at 3.)  Dr. Berall argues that no further disclosure is required because Mr. Baxley "is not withholding other documents containing facts related to conception and actual reduction to practice."  (Opp. at 3.)  The instant dispute, however, concerns the scope of Dr. Berall's waiver: did Dr. Berall waive privilege over all communications with Mr. Baxley regarding the '178 Patent's prosecution or just communications with Mr. Baxley regarding the '178 Patent's conception and actual reduction to practice?

---

[7] In opposing Teleflex's motion, Dr. Berall stated that he "has been unable to locate the 2007 Retention Letter in his possession, custody, or control" and that the Letter of Retention is "in Baxley's custody."  (Opp. at 1 n.1.)

[8] Dr. Berall argues that he sought to keep neither the conception nor the reduction to practice of the '178 Patent confidential, eliminating the application of the attorney-client privilege to those communications.  (<u>See</u> Opp. at 3.)  Dr. Berall argues that even if there were a waiver of attorney-client privilege, the waiver is limited "to the subjects of conception and actual reduction to practice of the invention."  (<u>Id.</u>)

Teleflex argues that Dr. Berall waived privilege over all communications with Mr. Baxley regarding the '178 Patent's prosecution because Dr. Berall placed his communications with Mr. Baxley "at issue" in the litigation when he submitted those communications during the USPTO's '178 Patent reexamination proceedings.[9]  Teleflex argues that subject matter waiver applies because the disclosed communications discuss "not only conception and reduction to practice" but also "diligence, patentability, validity, scope of the prior art, and claim scope" of the '178 Patent.  (Reply at 2.)  Dr. Berall maintains that the scope of any waiver is limited to communications with Mr. Baxley regarding the '178 Patent's conception and reduction to practice because he inadvertently submitted the privileged communications "randomly in the midst of appeal briefs filed on Oct. 9 and 12, 2012."  (Opp. at 3.)  Dr. Berall argues that because he inadvertently disclosed the privileged communications, he did not place the communications "at issue"

---

[9] Specifically, Teleflex argues that in June 2011, Dr. Berall publicly filed two declarations--one from Dr. Berall and one from Mr. Baxley—"describing privileged communications between himself and Baxley regarding the conception, reduction to practice, diligence, claim scope, and patentability of the '178 Patent."  (Mot. at 3; see also Opp. Exs. 2, 4.) Teleflex also argues that on October 9, 2021, and October 12, 2021, Dr. Berall publicly filed a letter from Mr. Baxley to Dr. Berall, dated September 28, 2012, "reflecting Baxley's mental impressions and opinions regarding the validity, obviousness, and scope of the claims of the '178 Patent."  (Mot. at 3; see also Opp. Exs. 7, 8.)

in this litigation, precluding subject matter waiver.  (Id.)
The Court first analyzes whether Dr. Berall placed privileged
communications and documents regarding the '178 Patent's
prosecution "at issue" in the litigation; then, the Court
determines whether Dr. Berall's submission of the privileged
communications and documents was inadvertent disclosure.

     "At issue" waiver of the attorney-client privilege occurs
"where a party affirmatively places the subject matter of its
own privileged communication at issue in litigation, so that
invasion of the privilege is required to determine the validity
of a claim or defense of the party asserting the privilege, and
application of the privilege would deprive the adversary of
vital information."  Windsor Sec., LLC v. Arent Fox LLP, 273 F.
Supp. 3d 512, 518 (S.D.N.Y. 2017) (citation omitted).  "Courts
will find that privileged/protected communications were put at
issue where '[i]t would be unfair for a party who has asserted
facts that place privileged communications at issue to deprive
the opposing party of the means to test those factual assertions
through discovery of those communications.'"  Sparrow Fund Mgmt.
LP v. MiMedx Grp., Inc., No. 18-cv-4921 (PGG) (KHP), 2021 WL
1930294, at *2 (S.D.N.Y. May 13, 2021) (citing Windsor Sec.,
LLC, 273 F. Supp. 3d at 518).

     Unlike in Windsor Sec., LLC where the court did not find an
"at issue" waiver because the party's need to determine

attorneys' fees was distinct from the instant dispute, this is a
patent infringement suit where one of the parties' primary
disputes is the validity of the '178 Patent.  (See Mot. at 3
n.6; 213 ¶¶ 104-09.)  The documents that Dr. Berall disclosed to
the USPTO directly address the validity of the '178 Patent.  For
example, in his letter to Dr. Berall dated September 28, 2012,
Mr. Baxley states his "mental impressions and opinions regarding
the validity, obviousness, and scope of the claims of the '178
Patent."  (Mot. at 3; see also Opp. Exs. 7, 8.)  Although Dr.
Berall argues that the September 28, 2012 letter "has no clear
purpose and is never referenced [by the USPTO]," Dr. Berall
admits that the letter "may have [been] intended to include for
the USPTO's reference a public article discussing KSR Int'l Co.
v. Teleflex Inc., 550 U.S. 398 (2007)."  (Opp. at 3.)  Because
Dr. Berall did not submit a declaration stating that these
disclosures (1) were inadvertent and (2) not submitted to
support his patent application, the Court finds that it would be
unfair "to deprive [Teleflex] of the means to test those factual
assertions through discovery of those communications."  Sparrow
Fund Mgmt. LP, 2021 WL 1930294, at *2.  Accordingly, the
remaining dispute is whether Dr. Berall inadvertently disclosed
the privileged communications to the USPTO.

"As a general rule, the voluntary production of a

10

privileged document waives any claim of privilege with respect
to that document." United States v. Rigas, 281 F. Supp. 2d 733,
737 (S.D.N.Y. 2003).  Privilege will not be deemed waived when a
party inadvertently produces privileged material "unless the
conduct of the producing party or its counsel evinced such
extreme carelessness as to suggest that it was not concerned
with the protection of the privilege."  In re Nat. Gas Commodity
Litig., 229 F.R.D. 82, 85 (S.D.N.Y. 2005) (citation omitted).
"Although this rule recognizes that mistakes will be made given
'the realities of the discovery process in complex litigation,'
it also creates an incentive for counsel to guard the privilege
closely, as the failure to take reasonable precautions will
result in a waiver."  United States v. Gangi, 1 F. Supp. 2d 256,
264 (S.D.N.Y. 1998) (citations omitted).

    "To determine whether an inadvertent disclosure waived the
privilege, courts in this Circuit balance four factors: [1] the
reasonableness of the precautions to prevent inadvertent
disclosure, [2] the time taken to rectify the error, [3] the
scope of the discovery and the extent of the disclosure . . .,
[and 4] overreaching issues of fairness."  In re Nat. Gas
Commodity Litig., 229 F.R.D. at 86 (citations omitted).

    The first factor favors neither party as Dr. Berall
provided no information regarding the procedures he followed to
maintain the confidentiality of his communications with Mr.

Baxley.  See Prescient Partners L.P. v. Fieldcrest Cannon, Inc.,
96 Civ. 7590, 1997 WL 736726 (DAB) (JCF), at *5 (S.D.N.Y. Nov.
26, 1997) (internal quotations and citations omitted)
("Generally, precautions will be reasonable if the procedure
followed in maintaining the confidentiality of the document [is]
not . . . so lax, careless, inadequate or indifferent to
consequences as to constitute a waiver."); Rigas, 281 F. Supp.
2d at 739 ("[T]he reasonableness of a party's actions to protect
privileged information should be measured in light of the risks
foreseeable to that party at the time the precautions were
taken.  The mere fact of an accidental disclosure does not
automatically render the precautionary measures unreasonable at
the time they were performed.").

     The second factor favors Teleflex for two reasons.  First,
Dr. Berall disclosed the privileged September 28, 2012 letter to
the USPTO after disclosing privileged communications in the
declarations submitted to the USPTO in June 2011, showing that
Dr. Berall continued to disclose privileged communications
rather than promptly rectifying the original disclosure.  See
Prescient Partners L.P., 1997 WL 736726, at *6 ("Inordinate
delay in claiming the privilege can prejudice the adversary and
may be deemed a waiver.").  Second, Dr. Berall's current counsel
was not aware that Dr. Berall--while acting pro se--disclosed
privileged communications until counsel attempted to claw back

the September 28, 2012 letter during Mr. Baxley's deposition
(see Mot. at 3 n.5; Mot. Ex. H).  Inordinate delay occurred in
this case because Dr. Berall did not attempt to rectify the
privileged disclosures during the '178 Patent's reexamination,
and, by the time that Dr. Berall's current counsel attempted to
claw back the privileged communication, the USPTO had completed
its examination.

The third factor also favors Teleflex as Dr. Berall only
disclosed four documents containing privileged information (see
Mot. Ex. G).[10]  See In re Nat. Gas Commodity Litig., 229 F.R.D.
at 89 (quoting Prescient Partners, L.P., 1997 WL 736726, at *6-
7) ("Courts have routinely found that where a large number of
documents are involved, there is more likely to be an
inadvertent disclosure rather than a knowing waiver."); Rigas,
281 F. Supp. 2d at 740 (citation omitted) ("Courts generally
decline to find waiver when a 'relatively small number of
privileged documents were disclosed in comparison to the total
number of documents produced.'").  The fact that Dr. Berall only
disclosed four privileged documents suggests that he knowingly
waived the attorney-client privilege.

---

[10] The four documents are: (1) Mr. Baxley's declaration dated
June 24, 2011; (2) Dr. Berall's declaration dated June 24, 2011;
(3) Exhibit R I to Dr. Berall's declaration dated June 24, 2011;
and (4) the September 28, 2012 letter from Mr. Baxley to Dr.
Berall.  (See Mot. Ex. G.)

Finally, the fourth factor favors Teleflex.  In weighing the prejudices to each party, the court weighs "the degree to which the contents of the documents have been disseminated and the receiving party's reliance thereon" against "the harm to the client who suffers the waiver of privilege due to an inadvertent error."  In re Nat. Gas Commodity Litig., 229 F.R.D. at 89; see also Prescient Partners L.P., 1997 WL 736726, at *7 (noting that the "prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information").  The Court finds that restoring immunity to the disclosed communications would be unfair to Teleflex for the same reasons why the disputed communications are "at issue" in the litigation: the USPTO had access to consider the privileged communications during the '178 Patent's reexamination.  Dr. Berall's argument that the USPTO did not rely on these communications in determining the '178 Patent's validity fails, as the disclosed communications contained legal opinions regarding the very issues that the USPTO was reexamining.  Thus, all but one of the factors favor Teleflex.  Accordingly, the Court finds that Dr. Berall did not inadvertently disclose the communications with Mr. Baxley and placed the communications "at issue" in the litigation, waiving the attorney-client privilege over communications with Mr.

Baxley regarding the '178 Patent's prosecution.  Accordingly, Teleflex's motion to compel Dr. Berall to produce communications with Mr. Baxley regarding the '178 Patent's prosecution is GRANTED.

### b. Verathon's Motion Against Mr. Baxley

#### i. Letter of Retention

Federal Rule of Civil Procedure 45 permits the issuance of a subpoena duces tecum to non-parties.  The non-party to whom the subpoena is addressed may object to the subpoena.  Fed. R. Civ. P. 45(d)(2)(B).  "Motions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the Court."  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (citation omitted).  Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery "that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible in evidence to be discoverable."

For the same reasons as stated above, see supra Section I.a.i., the Court agrees with Verathon's arguments that the Letter of Retention is relevant and not privileged.  (See Verathon Mot. at 11-16.)  Accordingly, Verathon's motion to compel Mr. Baxley to produce the Letter of Retention is GRANTED.

#### ii. Prosecution Documents

For the same reasons as stated above, see supra

Section I.a.ii., the Court agrees with Verathon's arguments that Dr. Berall waived privilege over communications with Mr. Baxley regarding the '178 Patent's prosecution.  (See Verathon Mot. at 16-19.)  Accordingly, Verathon's motion to compel Mr. Baxley to produce communications with Dr. Berall regarding the '178 Patent's prosecution is <u>GRANTED</u>.

    II.   <u>CONCLUSION</u>

    To the extent and for the reasons stated above, Defendant's motion to compel Dr. Berall to produce the Letter of Retention and all communications with Mr. Baxley regarding the '178 Patent's prosecution (dkt. no. 307) is <u>GRANTED</u>.  Verathon's motion to compel Mr. Baxley to produce the Letter of Retention and communications with Dr. Berall regarding the '178 Patent's prosecution (dkt. nos. 6 in [21-mc-794]; 4 in [21-mc-774]; 7 in [21-mc-774] is <u>GRANTED</u>.  The Clerk of the Court shall close the open motions (dkt. nos. 307 in [10-cv-5777]; 6 in [21-mc-794]; 4 in [21-mc-774]; 7 in [21-mc-774]).

**SO ORDERED.**

Dated:    December 17, 2021
          New York, New York

                    _Loretta A. Preska_____
                    LORETTA A. PRESKA
                    Senior United States District Judge